IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 17-cv-00503-CMA-KMT

STEVEN JACCAUD,

    Plaintiff,

v.

OWNERS INSURANCE COMPANY,

    Defendant.

___

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
___

This matter is before the Court on Defendant Owners Insurance Company's Motion for Summary Judgment. (Doc. # 21.) For the reasons stated below, the Court DENIES Defendant's motion.

## I.    BACKGROUND

The following facts are undisputed. Defendant insured Plaintiff Steven Jaccaud's residential property in Centennial, Colorado (hereinafter the "Property"), under Homeowner's Insurance Policy Number 46-749-410-00 (hereinafter the "Policy"). (Doc. # 12 at 2.) Relevant here, the Policy included an appraisal provision in form 17909 (2-96):

> If **you** or **we** fail to agree on the actual cash value or amount of loss covered by this policy, either party may make written demand for an appraisal. Each party will select an appraiser and notify the other of the appraiser's identity within 20 days after the demand is received. The appraisers will select a competent and impartial umpire. If the appraisers

> are unable to agree upon an umpire within 15 days, **you** or **we** can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire.
>
> The appraisers shall then appraise the loss, stating separately the actual cash value and loss to each item. If the appraisers submit a written report of an agreement to **us**, the amount agreed upon shall be the actual cash value or amount of loss. If they cannot agree, they will submit their differences to the umpire. A written award by two will determine the actual cash value or amount of loss.
>
> Each party will pay the appraiser is chooses, and equally pay the umpire and all other expenses of the appraisal.

(Doc. # 13 at 8.)

After the Property sustained damage from a wind and hail storm on September 29, 2014, Plaintiff submitted a claim for benefits to Defendant on October 8, 2014. (Doc. # 12.) Defendant inspected the Property on October 13, 2014, and subsequently issued Plaintiff a settlement claim check on November 4, 2014, in the amount of $15,722.12. (*Id*.) Plaintiff considered this amount insufficient to cover the loss. On December 5, 2014, Plaintiff sent Defendant an estimate from a private contractor that stated a replacement cost value of $80,902.28. (*Id*. at 2.) In response, Defendant issued a supplemental payment in the amount of $12,641.75, on April 6, 2015, acknowledging additional repairs that were covered under the Policy, and bringing the total amount Defendant paid out to Plaintiff $28,363.87. (Doc. # 13 at 2.) Plaintiff was not satisfied with this supplemental amount. (*See* Doc. # 12 at 2.)

Plaintiff invoked the Policy's appraisal provision on April 30, 2015, and his public adjuster sent an appraisal demand to Defendant. (Doc. # 13 at 3.) In response, on May 19, 2015, Defendant explained that "appraisal is only appropriate under the policy to the

extent that there are, in fact, disagreements over the actual cash value or amount of loss." (Doc. # 24-2 at 1.) Defendant thus requested a copy of Plaintiff's contract with his private contractor for the repairs related to the loss and requested further documentation pertaining to the items in dispute that Plaintiff believed should be covered under the Policy. (Doc. # 24-2 at 7.) Relevant here, Defendant wrote:

> While Auto-Owners agrees that appraisal is appropriate with regard to the disputed items identified above, we believe the commencement of the appraisal process itself should be deferred until the scope of appraisal is clarified after our review and consideration of the documentation we have requested. Auto-Owners hereby appoints as its appraiser Gimple Roof Engineers, Inc.

(*Id.*) The parties dispute the meaning of Defendant's May 19, 2015, letter. Defendant alleges it "provisionally" appointed an appraiser, Gimple Roof Engineers, Inc., (hereinafter "Gimple"). (Doc. # 21 at 4.) However, Plaintiff understood Gimple's appointment by Defendant to be definite. *See* (Doc. # 12 at 2.)

As a result of Plaintiff's belief that Gimple had been appointed as Defendant's appraiser, Plaintiff commenced an appraisal on August 3, 2015, despite Defendant's statement in the letter that it wished to delay the appraisal process until the requested documentation was provided. (Doc. # 24-5); *see* (Doc. # 12 at 2.) The appraisal, completed and signed by both Defendant's appraiser Gimple, and Plaintiff's appraiser Trever Karas awarded Plaintiff a replacement cost value of $75,955.05 on September 17, 2015. (Doc. ## 24-5, 24-4.) No umpire was needed to settle the award amount, implying that the appraisers agreed on the amount of loss. (Doc. ## 24-4, 21-9 at 9.)

Defendant, through undersigned counsel, Gregory R. Giometti & Associates (hereinafter "Giometti"), issued a letter to Plaintiff on November 4, 2015. (Doc. # 21-9 at

3

15.) The letter explained that because "[Plaintiff] did not provide requested documentation prior to the appraisal process, the resulting appraisal award would not survive judicial scrutiny, as certain contractual, conditions precedent [had] not been satisfied." (*Id*.) Defendant informed Plaintiff that per Policy language, Plaintiff had a duty to cooperate in the adjustment of the claim, which included providing the requested documentation to Defendant and submitting to an examination under oath ("EUO"). (Doc. # 21-9 at 16.)

Thus, Defendant alleged certain grounds existed for vacating the award pursuant to Colorado's Uniform Arbitration Act ("CUAA"). (Doc. # 21-9 at 17.) Defendant asserted that under Bulletin B-5.26, which governs the process of appraisals in Colorado,[1] the appraisal would not survive a judicial challenge first because Plaintiff failed to provide requested documentation to Defendant that would have allowed Defendant to determine the appropriate scope of the appraisal. (Doc. ## 21-9 at 17.) Second, Defendant reasoned that because Gimple investigated the claim prior to receiving any information from Defendant, Gimple must have obtained this information from Plaintiff or his representative and, therefore, engaged in prohibited *ex parte* communications with Plaintiff.[2] (Doc. # 21-10 at 1.) In exchange for pursuing judicial review, Defendant

---

[1] The relevant portion of the Bulletin states "[t]he insurer, insured and their representative, including a licensed public adjuster, must not have ex parte communications with the appraiser or umpire during the appraisal process. The appraisers and umpire shall not have any substantive communication with any insurer, insured or their representative, including licensed public adjuster [sic], without participation by both parties and/or their representatives." Bulletin B-5.26, § III.3.
[2] Under Colo. Rev. Stat. § 13-22-223(1)(a), "[u]pon motion to the court by a party to an arbitration proceeding, the court shall vacate an award made in the arbitration proceeding if the court finds that: [t]he award was procured by corruption, fraud, or other undue means." Defendant relies upon *Hahn v. A.G. Becker Paribas, Inc.*, 518 N.E.2d 218, 223 (Ill. App. Ct.

4

"propose[d] that Mr. Jaccaud voluntarily vacate the appraisal award." (Doc. # 21-10 at 1.) Defendant also requested that Plaintiff fulfill the pending request for documentation and complete an EUO. (Doc. # 21-10 at 1.) This, Defendant stated, would allow it to determine whether a disagreement over the amount of loss exists, and, if so, the proper scope of an ensuing appraisal. (*Id.*)

Plaintiff's then-counsel, Kate Silburn, responded on November 12, 2015, stating "[Plaintiff] is willing to vacate the appraisal award and agrees that the appraisal was not a valid appraisal. [Plaintiff] does so without waiving the valid amount of the estimate in the amount of $65,862.94."[3] (Doc. # 21-11.) Defendant took Plaintiff's EUO on January 21, 2016. (Doc. ## 12 at 4, 13 at 5.) On August 21, 2016, Defendant issued a supplemental check to Plaintiff in the amount of $8,015.09. (Doc. ## 12 at 4, 13 at 5.) Thus, the total claim award granted to Plaintiff by Defendant was $36,378.96. As pertinent here, Plaintiff asserts he is still owed $37,227.62. (Doc. # 24 at 6.)

Plaintiff commenced this suit on January 19, 2016 (Doc. # 1), alleging breach of contract, statutory claims pursuant to §§ 10-3-1115 and 10-3-1116, and common law bad faith breach of contract (Doc. # 12). Plaintiff argues that he did not agree to vacate the appraisers' award of $75,955.05. (Doc. # 24 at 2.) He also argues that Defendant failed to pay amounts due and owing under the Policy, subjecting it the claims Plaintiff brought forth in this suit (Doc. # 12 at 4–5).

---

1987), which found that "[e]x parte contact involving disputed issues raises a presumption that the arbitration award was procured by fraud, corruption, or other undue means."

[3] The amount Ms. Silburn referenced was the net actual cash value, $65,862.94, as opposed to the replacement cost value award of $75,955.05. The difference in award amount denotes the amount less appreciation of $10,092.11. *See* (Doc. # 24-4.)

Defendant moved for summary judgment on all claims on December 15, 2017. (Doc. # 21.) Plaintiff filed his response brief on January 12, 2018 (Doc. # 24), and Defendant filed its reply brief on February 2, 2018 (Doc. # 28).

## II. STANDARD OF REVIEW

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okla.*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing motions for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id*. However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id*. In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the Court a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Id.* Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. Stated differently, the party must provide "significantly probative evidence" that would support a verdict in his favor. *Jaramillo v. Adams Cty. Sch. Dist. 14*, 680 F.3d 1267, 1269 (10th Cir. 2012). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

### III. DISCUSSION

#### A. BREACH OF CONTRACT CLAIM

Plaintiff contends that Defendant breached the contract because Defendant failed to pay amounts due under the Policy. (Doc. # 12 at 4.) At the outset, the Court observes that the amount Plaintiff requests, $37,227.72, (Doc. # 24 at 6)—in addition to the amount Defendant has already awarded, $36,378.96—does **not** equate to either the appraisers' replacement cost value award of $75,955.05, or the award less depreciation, $65,862.94 (Doc. # 24-4). The claimed amount due comes to a total of $73,606.58. Reading Plaintiff's Complaint (Doc. # 12) and Response to Defendant's Motion for Summary Judgment (Doc. # 24) in the light most favorable to Plaintiff, the

7

Court infers that Plaintiff is arguing Defendant breached the Policy by failing to pay Plaintiff the replacement cost value decided upon by the appraisers.

In its Motion for Summary Judgment, Defendant argues that there are no genuine issues of material fact because "[Defendant] satisfied the terms and conditions of the Policy by paying the amount determined through the process established by the binding settlement agreement between Plaintiff and [Defendant]." (Doc. # 21 at 8.) Defendant contends that in its November 5, 2015 letter, it proposed to refrain from seeking judicial review in exchange for Plaintiff's agreement to vacate the appraisal award and to participate in Defendant's EUO. (*Id*. at 7-8.) Thus, Defendant asserts, because Plaintiff's then-counsel, Ms. Silburn, agreed to vacate the appraisal award, Plaintiff agreed to Defendant's "proposal." (*Id*. at 6.) Further, Defendant urges, Plaintiff's actions in compliance with the "proposal," such as submitting to an EUO, are further evidence of Plaintiff's agreement to a binding settlement. (I*d*. at 8.) Defendant contends that when it issued a final supplemental award subsequent to Plaintiff's EUO in the amount of $8,015.09, the amount of loss was determined in finality, and Defendant owes no further duty under the Policy. (*Id.*) Therefore, Defendant argues it performed its duties under the contract as established by the binding settlement agreement, and there are no disputes of material fact to support Plaintiff's claim that Defendant failed to issue owed benefits. (Doc. # 28 at 6.)

In response, Plaintiff disputes Defendant's characterization of Defendant's November 5, 2015, letter "as a proposed settlement agreement." (Doc. # 24 at 2-3.) Plaintiff argues that Defendant's November 5, 2015, letter was not a "proposal" because

8

it did not clearly and unambiguously indicate the amount of loss that would be determined by the "settlement agreement." (*Id.* at 7.) Plaintiff further contends that the process by which an amount would be determined was not clearly defined. (*Id.*)

In addition, Plaintiff disputes Defendant's assertion that Ms. Silburn voluntarily vacated the award amount in her response on November 12, 2015. (Doc. # 24 at 3.) Plaintiff relies upon Ms. Silburn's language, where she stated that while Plaintiff recognized the appraisal process was invalid, he was willing to waive the appraisal "without waiving the valid amount of the estimate." (Doc. ## 24 at 3, 21-11.) Ms. Silburn's letter, Plaintiff argues, indicated that Plaintiff never intended that Defendant's proposal, if accepted, would be a binding settlement agreement. (Doc. # 24 at 7.) Therefore, Plaintiff contends that a dispute exists regarding what damage was caused to Plaintiff's home by the hailstorm, and what amount is owed under the Policy.[4] (*Id.*)

Under Colorado law, a claim for breach of contract requires the following elements: "(1) the existence of a contract; (2) that [plaintiff] performed his duties under the contract (or that [plaintiff] was justified in failing to do so); (3) that defendant failed to perform the contract; and (4) resulting damages." *Long v. Cordain*, 343 P.3d 1061, 1067 (Colo. App. 2014) (citing *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992)).

The terms of a settlement agreement must be clear, unambiguous, and capable of enforcement. *Bonser v. Safeway, Inc.*, 809 F.Supp. 799, 803 (D. Colo. 1992) (citing *United Mine Workers of Am. Dist. No. 5 v. Consolidation Coal Co.*, 666 F.2d 806, 810

---

[4] Plaintiff further contends that Defendant's counsel must recuse himself because he is an indispensible witness to the case at hand. The Court declines to analyze this argument until Plaintiff files an appropriate motion for recusal.

(10th Cir. 1981)). The terms in a settlement proposal must also be definitive. *Sumerel v. Goodyear Tire & Rubber Co.*, 232 P.3d 128, 133 (Colo. App. 2009) (citing *Citywide Bank v. Herman*, 978 F. Supp. 966, 977 (D. Colo. 1997)). Whether a settlement agreement exists is a question of fact to be determined in light of all the surrounding circumstances. *Yaekle v. Andrews*, 195 P.3d 1101, 1111 (Colo. 2008). Thus, a court may only enforce a settlement agreement if it constitutes an enforceable contract. *Id.*

Viewing the evidence in the light most favorable to Plaintiff, *see Allen*, 119 F.3d at 839, the Court concludes that Defendant's November 5, 2015 "proposal," as construed by Plaintiff, presents a genuine issue of material fact. Plaintiff has satisfactorily set forth specific facts "that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *See Adler*, 144 F.3d at 671. Specifically, a rational trier of fact could find that the purported "binding settlement agreement" lacked clear, definitive terms of an agreed upon settlement amount, and did not clearly indicate that Defendant satisfied the terms and conditions of the Policy. Defendant is therefore not entitled to judgment as a matter of law on Plaintiff's breach of contract claim. *See Hecla*, 811 P.2d at 1089 ("Whether coverage is ultimately available under the contract is a question of fact to be decided by the trier of fact" (citing *Reliance Ins. Co. v. Martin*, 467 N.E.2d 287, 290 (Ill. App. Ct. 1984))); s*ee also Meissen*, 285 P.3d at 333.

### B. STATUTORY BAD FAITH CLAIM AND COMMON LAW BAD FAITH BREACH OF CONTRACT CLAIM

Under Colorado law, an insurer has a statutory duty to "not unreasonably delay or deny payment of a claim for benefits" of a first-party insured. Colo. Rev. Stat. § 10-3-

1115(1)(a). An insurer's delay or denial is unreasonable "if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action." Colo. Rev. Stat. § 10-3-1115(2). What constitutes reasonableness under specific circumstances is ordinarily a question of fact for the jury. "However, in appropriate circumstances, as when there are no genuine issues of material fact, reasonableness may be decided as a matter of law." *Vaccaro v. Am. Family Ins. Grp.*, 275 P.3d 750, 759 (Colo. App. 2012). A first-party insured whose claim has been unreasonably delayed or denied "may bring an action in a district court to recover reasonable attorney fees and court costs and two times the covered benefit." Colo. Rev. Stat. § 10-3-1116(1).

Similarly, an insurer must deal in good faith with its insured, *Decker v. Browning-Ferris Indus. of Colo.*, 931 P.2d 436, 443 (Colo. 1997), because every contract contains an implied duty of good faith and fair dealing, *Goodson v. Am. Standard Ins. Co.*, 89 P.3d 409, 414 (Colo. 2004). *See also* Colo. Rev. Stat. § 10-3-1113(1). An insurer's breach of this duty gives rise to a tort cause of action. *Goodson*, 89 P.3d at 414 (citing *Cary v. United of Omaha Life Ins. Co.*, 68 P.3d 462, 466 (Colo. 2003)). For a first-party insured to prove that an insurer breached the contract in bad faith, the insured must prove: (1) "the insurer acted unreasonably under the circumstances," and (2) "the insurer either knowingly or recklessly disregarded the validity of the insured's claim." *Id.* (citing *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1274 (Colo. 1985)); *see also* Colo. Rev. Stat. § 10-3-1113(3). At the first prong, the reasonableness of the insurer's conduct "must be determined objectively, based on proof of industry standards." *Id.*

Plaintiff's statutory claim under §§ 10-3-1115 and 10-3-1116 is based on his allegation that Defendant unreasonably delayed or denied Plaintiff's claim. Plaintiff argues that (1) Defendant named Gimple as its appraiser, and (2) in doing so, Defendant indicated that it believed Gimple was competent and impartial. (Doc. # 24 at 9.) As a result, Plaintiff argues that the appraisal amount agreed upon by Gimple and Karas is valid. (Doc. # 24 at 10.) Plaintiff asserts that he never waived this valid appraisal amount. (Doc. ## 24 at 10, 1-3 at 32.) Thus, Plaintiff argues that Defendant's denial of the appraisal award constitutes delay without a reasonable basis. (Doc. # 24 at 10.)

In his common law bad faith breach of an insurance contract claim, Plaintiff asserts that Defendant "acted unreasonably and breached its duties of good faith and fair dealing" by acting in the "following unreasonable" ways:

- a. Failing to properly investigate and evaluate Plaintiff's claim for Policy benefits;
- b. Failing to pay Plaintiff the full benefits owed under the Policy;
- c. Failing to pay amounts under the Policy in a timely manner;
- d. Failing to effectuate a prompt, fair, and equitable settlement of Plaintiff's claim;
- e. Failure to give equal consideration to Plaintiff's rights and interests as it has given its own interests;
- f. Depriving Plaintiff of the benefits and protections of the contract of insurance;
- g. Compelling Plaintiff to institute litigation in order to recover amounts due under the Policy;
- h. Coercing and/or intimidating Plaintiff into vacating his valid appraisal award; and

i. Other conduct to be revealed through discovery.

(Doc. # 12 at 5.)

As the Court previously explained, Plaintiff disputes that there was a binding settlement agreement. (Doc. # 24 at 11.) He argues that he not only expressly reserved the amount of loss determined by the appraisal, but also did not intend for acceptance of Defendant's proposal to be construed as acceptance of a "binding settlement agreement." (*Id.*) Plaintiff asserts that Defendant knew its conduct was unreasonable because it did not pay the amount of loss its own appraiser, Gimple, awarded. (*Id*.)

Defendant argues that there are no benefits owed to Plaintiff under the Policy because Plaintiff agreed to a "binding settlement agreement." (Doc. # 21 at 9–10.) Defendant contends that it could not have unreasonably delayed or denied covered benefits because there are no benefits due or owed under the Policy. (*Id*. at 10.)

It is clear to this Court that there exists a genuine dispute of a material fact regarding whether Defendant owes Plaintiff additional benefits and whether the denial of said benefits was reasonable. Plaintiff has "set forth specific facts showing that there is a genuine issue for trial." *See Anderson*, 477 U.S. at 256. Further, the reasonableness of an insurer's conduct is generally a question of fact for the jury. *Vaccaro*, 275 P.3d at 759. The Court is therefore satisfied that Plaintiff has shown there are genuine issues of material fact and that the reasonableness of Defendant's conduct may be decided by a jury. Defendant is not entitled to summary judgment on Plaintiff's statutory bad faith claim and bad faith breach of contract claim.

## IV. CONCLUSION

In accordance with the foregoing, it is ORDERED that Defendant's Motion for Summary Judgment (Doc. # 21) is DENIED.

DATED: March 12, 2018

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge